UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Efstathia Bura<br>1530 Key Boulevard, No. 422<br>Arlington, VA 22209<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>The George Washington University<br>2121 I Street, N.W.<br>Washington, D.C. 20052<br><br>　　　Defendant. | Civil Action No.<br><br><br>JURY DEMAND<br><br><br>April 10, 2015 |

## COMPLAINT

1. Plaintiff, Ms. Efstathia Bura, Ph.D. (hereafter Dr. Bura), brings this action against her employer, Defendant George Washington University (hereafter GWU), for willfully violating her right to be paid equally to men performing work of similar skills, effort and responsibility at the same place of her employment, in violation of the Equal Pay Act, 29 U.S.C. § 206(d). She also claims that GWU has discriminated against her because of her sex in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-2(a), and the District of Columbia Human Rights Act (hereafter the DCHRA), D.C. Code § 2-1402.11.

## JURISDICTION

2. This Court has jurisdiction over the federal claims under 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 216. The Court has jurisdiction over the DCHRA claims based on diversity jurisdiction, as set forth under 28 U.S.C. § 1332, in that the parties reside in different states, and based on supplemental jurisdiction as forth under 28 U.S.C. § 1367, in that the claims are so related to the federal claims that they form the same case or controversy.

3. Venue in this Court is appropriate under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the acts of discrimination occurred in this judicial district and GWU employs Dr. Bura in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. On or about May 9, 2013, Dr. Bura filed a timely charge of sex discrimination and unequal pay against GWU with the Equal Employment Opportunity Commission (EEOC). The EEOC automatically cross-filed the charge with the D.C. Office of Human Rights under a work sharing agreement between the two agencies.

5. Dr. Bura received a right-to-sue letter from the EEOC on her charge on January 23, 2015 and has filed this action within 90 day of receiving it.

6. Dr. Bura has also filed this action under the DCHRA within one year from the last date of discrimination against her, excluding the time period her charge was pending at the D.C. Office of Human Rights and the time period covered by the Parties' Tolling Agreement executed on June 20, 2014 and in effect from June 20, 2014 until March 30, 2015.

7. Dr. Bura has otherwise exhausted her administrative processing requirements and all administrative remedies.

## PARTIES

8. Dr. Bura is a woman who resides in Arlington, Virginia. At all times relevant to this Complaint, Dr. Bura is and was an employee of GWU, as defined under Title VII, 42 U.S.C. § 2000e(f); the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1); and Section 2-1402.11 of the D.C. Code.

9. GWU is an institution of higher education located in the District of Columbia. At all times relevant to this complaint, GWU is and was engaged in an industry affecting commerce with more than fifteen employees and is and was Dr. Bura's employer, as defined under 42 U.S.C. § 2000e(b); the FLSA, 29 U.S.C. § 203(d); and D.C. Code § 2-1402.11.

## STATEMENT OF FACTS

Dr. Bura's Education and Scholarship

10. Dr. Bura earned a B.S. in Mathematics from the University of Athens, Greece, in 1988. In 1990, she earned her M.S. in Mathematics from the University of Illinois at Chicago. In 1996, Dr. Bura obtained a Ph.D. in Statistics from the University of Minnesota.

11. Dr. Bura's dissertation was on dimension reduction in regression. Dr. Bura's scholarship focuses on linear, nonlinear, and nonparametric regression, regression graphics and computational statistics, multivariate analysis, biostatistics, legal statistics, and bioinformatics. Dr. Bura's primary specialty is High Dimensional Statistics and Dimension Reduction Statistics (a.k.a. dimensionality reduction or dimension reduction), which involves the process of reducing the number of random variables under consideration in any given set of data, without losing the predictive information they contain relative to a response variable, thereby making the

remaining variable or variables, their causes and effects, and so on, easier to study. Applications include predicting disease status response using thousands of genes as variables.

12. This highly technical and demanding specialization has applications in the fields of bio- and medical statistics, economics, legal statistics, and bioinformatics, among many others. Dr. Bura's specialty is highly marketable within the field of statistics.

13. Dr. Bura has numerous publications to her name. A list of these publications can be found on her GWU webpage at http://home.gwu.edu/~ebura/.

14. Dr. Bura's body of publications is comparable to, if not more comprehensive than or superior to, those of the male Full Professors in GWU's Statistics Department.

15. In the summer of 2002, Dr. Bura was awarded a highly prestigious five-year research grant from the statistics program of the National Science Foundation.

16. In 2011, Dr. Bura received a Fulbright U.S. Scholar award, which no other professor in GWU's Statistics Department has received.

Dr. Bura's Teaching Experience and Hiring at GWU

17. Prior to her employment at GWU, Dr. Bura was a Teaching Assistant in the University of Illinois at Chicago's Department of Mathematics and Statistics from September 1989 to June 1990.

18. She then served as a Teaching Assistant in the University of Minnesota's School of Statistics from September 1990 to June 1993. She then served as an Instructor in the School of Statistics at the University of Minnesota from September 1993 to June 1996.

19. In 1996, after conducting a national search, GWU hired Dr. Bura into the tenure track

4

position of Assistant Professor, effective August 15, 1996, within its Statistics Department.

20. The Statistics Department is a part of GWU's Columbian College of Arts and Sciences ("CCAS").  GWU extended Dr. Bura the offer only two days after her interview.

21. Dr. Bura also received job offers from every prospective employer with which she interviewed that year, including the University of Waterloo which, at the time, had the highest ranked Statistics Department in Canada; Northwestern University; and the Business School of the University of Minnesota.

22. From 1996-2002, Dr. Bura served with distinction as an Assistant Professor.  In 2002, GWU granted Dr. Bura tenure and promoted her to Associate Professor.

23. In 2004, Dr. Bura was appointed Deputy Chair of the Statistics Department.  She served as the Deputy Chair for the next three years.

24. In addition to her publications, awards and service to GWU, during her time at GWU Dr. Bura received positive student evaluations which were comparable to, if not superior to, all the other male Professors in her Department.

<u>Discrimination within GWU's Statistics Department</u>

25. Until Dr. Bura began to complain about sex discrimination at GWU, she was one of only two female professors in the Statistics Department and the only female tenured professor in the Department.

26. The other female professor, then Assistant Professor Qing Pan, was hired by GWU in 2007.  Dr. Bura served as the chair of her hiring committee.

27. GWU did not hire any other women into tenure track positions in the Statistics

Department until after Dr. Bura filed a grievance with the Faculty Senate complaining about gender discrimination against her for failing to promote her to Full Professor.

28. GWU then hired Dr. Tatiyana Apanasovich and Dr. Huixia (Judy) Wang. Dr. Bura served as the hiring committee chair for Dr. Apanasovich.

29. At various times in Dr. Bura's career at GWU, the male professors in the Statistics Department were involved in decisions affecting her promotion and pay. These men exhibited discriminatory bias and attitudes toward her as a woman as set forth as follows:

30. Full Professor Hosam Mahmoud has openly held, and voiced, derogatory opinions about the abilities of women in the sciences. For example, on one occasion Prof. Mahmoud commented in front of Dr. Bura and other professors that "For every one thousand worthy men [in the sciences] there is perhaps one worthy woman."

31. Dr. Nozer Singpurwalla, a now-retired male Full Professor in the Department, regularly asked Dr. Bura about her sex life and whom she was dating. He also regularly made sexually suggestive comments to her regarding her appearance and clothing, on one occasion remarking that Dr. Bura should "forget about these boyfriends of yours [and] go with a married man instead." Dr. Singpurwalla is married.

32. Dr. Joseph L. Gastwirth (male) regularly made demeaning comments about both Dr. Bura and other female professors in GWU's Statistics Department. For example, he remarked on numerous occasions about stereotypical habits which he imagined Dr. Bura and other women engaged in, stating "the stock market went up, you must have been busy shopping this weekend" or "the market went down, you must not have

6

shopped enough."

33. Other male professors, including Full Professor Tapan Nayak, made comments about Dr. Bura's appearance, her dress, clothing choices, etc. For example, on one occasion, Dr. Nayak indicated that, if Dr. Bura needed help moving boxes, that "you are an attractive woman. If you go outside, you will probably find men who want to help you."

34. Drs. Gastwirth, Singpurwalla, and Nayak also pressured Dr. Bura into accepting Ms. Jiao Yang as a Ph.D. student, despite Ms. Yang's relatively weak record as a student. Dr. Bura was subject to this pressure because Ms. Yang and Dr. Bura were both female, and Drs. Gastwirth, Singpurwalla, and Nayak felt that they should be paired together because both were female.

GWU's History of Undercompensating Dr. Bura as Compared to her Male Colleagues

35. From approximately 2004 until 2012-2013 when she was promoted to Full Professor, Dr. Bura was compensated at a substantially lower rate than the average Associate Professor at GWU.

36. For example, in 2005-06, the average Associate Professor salary at GWU was $84,300.00; Dr. Bura's salary that year was approximately $70,000.

37. In 2006-07, the average Associate Professor salary at GWU was $89,400.00; Dr. Bura's salary was $72,300.00.

38. In 2007-08, the average Associate Professor salary at GWU was $92,600.00; Dr. Bura's salary that academic year was $72,300.00.

39. In 2008-09, the average Associate Professor salary at GWU was $97,000.00; Dr. Bura's salary was $72,300.00.

7

40. In 2009-2010, the average Associate Professor salary at GWU was $98,600.00; Dr. Bura's salary that year was $72,300.00.

41. In 2010-2011, the average Associate Professor salary at GWU was $100,200.00; Dr. Bura's salary that year was $79,315.00.

42. In 2011-2012, the average Associate Professor salary at GWU was $103,100.00; Dr. Bura's salary that year was $81,115.00.

43. Upon information and belief, during the years Dr. Bura was employed at GWU as an Associate Professor, comparable male Associate Professors within GWU's Statistics Department were compensated at a rate much closer to the average Associate Professor compensation at GWU, and substantially higher than Dr. Bura was paid.

44. Upon information and belief, during the years in which Dr. Bura was employed as an Associate Professor, male Associate Professor Michael Larsen was compensated at a higher rate than Dr. Bura.

45. Upon information and belief, during the years in which Dr. Bura was employed as an Associate Professor, male Associate Professor Yinglei Lai was compensated at a higher rate than Dr. Bura.

46. Upon information and belief, during the years in which Dr. Bura was employed as an Associate Professor, male Associate Professor Jonathan Stroud was compensated at a higher rate than Dr. Bura.

47. Upon information and belief, during the years in which Dr. Bura was employed as an Associate Professor, male contract Associate Professor Subrata Kundu was compensated at a higher rate than Dr. Bura.

48. Upon information and belief, during the years in which Dr. Bura served as an Associate

Professor, GWU compensated even more junior male faculty in the Statistics Department at a higher rate than Dr. Bura.

49. For example, in 2011-2012, GWU hired Dr. Joshua Landon (male), as a contract Assistant Professor within the Statistics Department at a salary at or above that Dr. Bura was paid as a tenured Associate Professor.

50. In 2012, GWU denied Dr. Bura a promotion to Full Professor. Dr. Bura filed a grievance claiming that the denial was caused by sex discrimination and that the Department had violated various GWU rules in processing her application.

51. On April 11, 2013, GWU affirmed the grievance and appointed Dr. Bura as a Full Professor, retroactive to September 1, 2012.

52. At that time, GWU told her she would receive a salary increase of $4,500.00. Without explanation, GWU later reduced this amount to $4,036.00.

53. Dr. Bura objected to this salary and requested a salary more equal to those received by the other male Full Professors in the Statistics Department who were earning substantially more than she was.

54. As a response to Dr. Bura's objections to her salary, Dr. Marguerite Barratt, then Dean of the CCAS, offered to include Dr. Bura in a salary survey in the College and Dr. Bura agreed.

55. After the salary review, GWU determined that Dr. Bura had received lower merit raises than warranted from academic year 2006-07 through academic year 2012-13. GWU agreed only to increase Dr. Bura's salary from $87,198.00 to $94,285.00, retroactive to January 1, 2014. In fact, GWU did not start the monthly adjustment to Dr. Bura's salary until March 2014.

56. GWU did not provide Dr. Bura with the full results of the salary survey or the underlying salary data; nor did it describe the analysis performed, the methodology relied upon or the specific reasons for her low merit raises.

57. Upon information and belief, since being promoted to Full Professor in 2013 (retroactive to 2012), and even after the adjustments to her salary that GWU made in response to Dr. Bura's complaints of discrimination, Dr. Bura has been compensated at a substantially lower rate than all other male Full Professors within GWU's Statistics Department.

58. Upon information and belief, during the years in which Dr. Bura was employed as a Full Professor, male Full Professor Dr. Reza Modarres was compensated at a higher rate than Dr. Bura was paid during the same time period.

59. Upon information and belief, during the years in which Dr. Bura was employed as a Full Professor, male Full Professor Dr. Hosam Mahmoud was compensated at a higher rate than Dr. Bura was paid during the same time period.

60. Upon information and belief, during the years in which Dr. Bura was employed as a Full Professor, male Full Professor Dr. Joseph Gastwirth was compensated at a higher rate than Dr. Bura was paid during the same time period.

61. Upon information and belief, during the years in which Dr. Bura was employed as a Full Professor, male Full Professor Dr. Tapan Nayak was compensated at a higher rate than Dr. Bura was paid during the same time period.

62. Upon information and belief, during the years in which Dr. Bura was employed as a Full Professor, male Full Professor Dr. Zhaohai Li was compensated at a higher rate than Dr. Bura was paid during the same time period.

63. Upon information and belief, during the years in which Dr. Bura was employed as a Full

Professor, male Full Professor Dr. Nozer Singurwalla was compensated at a higher rate than Dr. Bura was paid during the same time period.

64. Upon information and belief, during the years in which Dr. Bura and Dr. Feifang Hu (male) were employed by GWU as Full Professors, Dr. Hu was compensated at a higher rate than Dr. Bura.

65. Upon information and belief, during the years in which Dr. Bura and Dr. Hua Liang (male) were employed by GWU as Full Professors, Dr. Liang was compensated at a higher rate than Dr. Bura.

66. Upon information and belief, during academic years 2009-2010, 2010-11, 2011-12, and 2012-13, several of the Department's male faculty received raises larger than the 2% raise that Dr. Bura received.

67. Thus, even after Dr. Bura's appointment to Full Professor, GWU continues to pay the male Full Professors in her Department more than it pays her.

68. Dr. Bura has continually tried to negotiate for higher pay but GWU has refused.

69. In view of her present job title and duties, teaching experience, qualifications, publications, awards, student and peer review evaluations and service to GWU, Dr. Bura performs and has performed work which is similar in skills, effort and responsibility at the same place of employment as these other male Full Professors.

70. Upon information and belief, GWU compensates male Associate Professors and male Assistant Professors within the Statistics Department at a rate comparable to, or even higher than, the rate at which Dr. Bura, as a Full Professor, is compensated, although Dr. Bura's title and credentials far exceed those of these other male professors.

71. For example, upon information and belief, in academic year 2013-14, GWU

compensated male Associate Professors Yinglei Lai, Michael Larsen and Jonathan Stroud, at or above the rate it paid Dr. Bura during that time.

72. Likewise, upon information and belief, Dr. Bura's present salary is also still below the salary paid to Dr. Winfried Barta, a male tenure accruing, non tenured Assistant Professor, as of his date of hire in 2012.

73. Dr. Barta received his Ph.D. in the summer of 2012. GWU hired Dr. Barta straight out of his doctoral program. At the time, Barta had minimal relevant work experience, had performed minimal research and had few collaborative (non-methodological) publications prior to receiving his doctorate.

74. As a further example of this unequal pay, in 2014 GWU hired Dr. Emre Barut, a male, as tenure-eligible Assistant Professor in the Statistics Department.

75. Upon information and belief, in 2014, GWU offered Dr. Barut a salary which was at least several thousand dollars more than the salary GWU paid Dr. Bura that year.

76. When he was hired, Dr. Barut was not a tenured Full Professor, had no previous service at GWU, no publications, and his teaching experience was not as extensive as Dr. Bura's.

77. Upon information and belief, during academic year 2013-14, Dr. Bura's salary was lower than the salary GWU paid to Dr. Mark Ward that year.

78. Dr. Ward was a male Visiting Associate Professor in GWU's Statistics Department in academic year 2013-14. Dr. Ward is an Associate Professor at Purdue University specializing in analysis of algorithms and data structures, information sciences, game theory, and large scale computation. Dr. Ward's Visiting Associate Professor duties are confined to teaching a few classes. Unlike Dr. Bura, he is not required to perform

other duties expected of full-time professors, much less full-time Full Professors, such as researching and publishing articles.

79. Upon information and belief, GWU agreed to pay Dr. Ward approximately $100,000 for an academic year -- a rate substantially higher than that GWU paid to Dr. Bura.

80. Similarly, upon information and belief, in academic year 2013-14, GWU's Statistics Department paid its Visiting Assistant Professors, Dr. Ravi Kalpathy (male) and Yaji Xu (male), more than it paid Dr. Bura that year.

81. Dr. Kalpathy graduated with his Ph.D. from the GWU Statistics Department in 2013 with no publications. As described above, Dr. Bura received her Ph.D. in 1996 and has numerous publications.

82. Dr. Kalpathy's responsibilities involved only teaching, and not any of the other tasks (e.g., publishing, pursuing grants, etc.) expected of non-visiting Assistant Associate or Full Professors, including Dr. Bura.

83. Upon information and belief, contract (i.e. non-tenure track) Associate Professor Subrata Kundu, another male, is currently paid more than Dr. Bura.

84. According to GWU salary reports, contract professors are teaching faculty only and are generally paid less than tenured or tenure track professors.

85. GWU paid Prof. Nozer Singpurwalla, a male Full Professor who is now retired but retains an appointment at GWU, over $350,000 in salary in 2012.

86. While he had been a Professor much longer than Dr. Bura (he held a joint appointment with GWU's Statistics and Operations Research Departments from 1977 to 2004, when he became a full-time Professor in the Statistics Department), the disparity between his pay and Dr. Bura's (Dr. Bura was paid just over $80,000 for the

same year), is stark.

87. Upon information and belief, Dr. Singpurwalla received raises totaling approximately 108% of his salary over the period of 9 years, while Dr. Bura received raises totaling approximately 23.6% of her salary over the same period.

88. Other male Full Professors who have been in the Statistics Department over the last 10 years, such as Drs. Modarres, Mahmoud, Gastwirth, Nayak and Li, have received raises over the last 10 years totaling over 50% of their salaries. No male Full Professor in the Department is paid the same or less than any of the assistant or associate professors, as is the case with Dr. Bura.

89. Upon information and belief, GWU's practice of paying Dr. Bura less than comparable men in the Statistics Department was part of a pattern and practice of pay discrimination against women in science, mathematics and related fields.

### FIRST CLAIM
### (For Violations of the Equal Pay Act)

90. Paragraphs 1 through 89 of the complaint are incorporated by reference and made paragraphs 1 through 89 of this claim.

91. The treatment GWU has accorded Dr. Bura, as specified in paragraphs 1 through 89 above, has violated and continues to violate the Equal Pay Act, 29 U.S.C. § 206(d), in that GWU failed to pay Dr. Bura salary and benefits equal to those of its male professors who perform or have performed work that is substantially similar to Dr. Bura's in terms of required skill, effort and responsibility in the same place of employment.

92. GWU did not act in good faith and did not have reasonable grounds for believing that it was not violating the Equal Pay Act.

93. In fact, GWU knew that its conduct violated the Equal Pay Act or acted in reckless disregard as to whether its conduct violated the Act. GWU's violations of the Equal Pay Act were willful.

94. As a consequence of GWU's violations of the Equal Pay Act, Dr. Bura suffered and continues to suffer lost pay and lost benefits that she would have accrued along with that pay.

## SECOND CLAIM

### (For Sex Discrimination in Violation of Title VII and the DCHRA)

95. Paragraphs 1 through 94 of this complaint are incorporated by reference and made paragraphs 1 through 94 of this claim.

96. By violating the Equal Pay Act and/or by treating Dr. Bura differently in continuing to pay her less in salary and other benefits that accrued to her salary than males who performed substantially similar work or performed work of even less skill and responsibility than hers, GWU discriminated against Dr. Bura because of her sex in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-2(a) and the DCHRA, D.C. Code § 2-1402.11.

97. As a result of GWU's discrimination, Dr. Bura has suffered damages in the form of lost pay and benefits, other attendant rights and privileges of her employment, and damages to her career. She has also suffered emotional distress including anxiety, humiliation, loss of self-esteem and loss of enjoyment of life.

98. GWU's actions were taken with malice and/or reckless indifference toward Dr. Bura's federal rights and rights under the DCHRA.

## REQUEST FOR RELIEF

Dr. Bura requests the Court to order the following relief:

1. Issue a judgment in her favor declaring that GWU has violated the Equal Pay Act, Title VII of the Civil Rights Act and the DCHRA;

2. Order that GWU make her whole for all her losses in wages and benefits, and damages to her career, with pre- and post-judgment interest;

3. Order that GWU pay her liquidated damages on all pay and benefits awarded under the Equal Pay Act;

4. Order GWU to compensate her for her emotional distress, anxiety, humiliation, loss of self-esteem and enjoyment of life she suffered from the discrimination against her because of her sex;

5. Order GWU to pay her punitive damages because of its malice and/or reckless indifference to her rights under Title VII and the DCHRA;

6. Order GWU to pay her reasonable attorneys' fees and costs as set forth under the Equal Pay Act, Title VII and the DCHRA;

7. Order GWU to provide her with other appropriate relief, including, but not limited to, ordering GWU to place Dr. Bura at the pay level where she would have been had GWU not discriminated against her because of her sex and had GWU not violated the Equal Pay Act.

## DEMAND FOR JURY TRIAL

Dr. Bura demands a trial by jury on all issues to which she is entitled under law.

Respectfully submitted,
FOR THE PLAINTIFF
EFSTATHIA BURA

By /s/Susan E. Huhta
Susan E. Huhta
D.C. Bar #453478
Heller, Huron, Chertkof & Salzman, PLLC
1730 M Street, N.W., Suite 412
Washington, D.C.  20036
Tel. (202) 293-8090
Fax (202) 293-7110
Email  seh@hellerhuron.com

By /s/Jonathan L. Gould
Jonathan L. Gould
D.C. Bar #491052
Law Office of Jonathan L. Gould
1730 M Street N.W., Suite 412
Washington, D.C.  20036
Tel. (202) 347-3889
Fax (703) 652-7589
Email  jgould@igc.org

Her Attorneys